WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Adam Dominguez, | ) | No. CV 12-691-TUC-CRP |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c). Pending before the Court are Plaintiff's Opening Brief ("Plaintiff's Brief") (Doc. 16), Defendant's Opposition to Plaintiff's Opening Brief ("Defendant's Brief") (Doc. 19), and Plaintiff's Reply (Doc. 20). For the following reasons, the Court remands this matter for an immediate calculation and award of benefits.

**BACKGROUND**

Plaintiff was born on January 7, 1978. (Administrative Record ("AR."), 8). In 1993, when Plaintiff was 15 years of age, he attempted suicide by shooting himself in the head. (AR. 146, 823; *see also* AR. 685 (CT scan reflects "residual fragment in the right frontal lobe."); AR. 817 ("the bullet remains in his skull.")). Since that incident, Plaintiff completed high school at 20 years of age and after having been placed in special education courses.

1   (AR. 21, 87, 468, 479, 511; *see also* AR. 817 ("he was placed in special education after his
2   gunshot.")).

3         Plaintiff last worked as a stocker at a Walmart Store from 1999 until 2006. (AR. 69,
4   84, 106-07). Prior to that, he worked as a cook from 1997 until 1998. (AR. 60, 84). Plaintiff
5   is right-hand dominant. (AR. 21).

6         In October 2006, Plaintiff filed an applications for disability insurance benefits and
7   supplemental security income alleging inability to work since October 24, 2006 due to: "lots
8   of headaches, left arm/hand gets tired easy, back always hurts, left side disabled.[.] In 1993
9   [I] was shot in the head, [I] did get [SSI] for a while, but then got a job, for me the job got
10  harder over the years. I was gettin[g] tired of the hard work [I] was going through daily.
11  Partial paralysis on right side/arm." (AR. 53-68, 83). After Plaintiff's applications were
12  denied initially and on reconsideration, he appeared unrepresented for a hearing before
13  Administrative Law Judge ("ALJ") Normal Buls, and the ALJ subsequently issued a decision
14  in January 2009 ("the 2009 Decision") finding Plaintiff was not disabled because although
15  he could not do his past work, he could perform other work. (AR. 6-16, 17-27, 28-25, 37-
16  43). Plaintiff ultimately appealed the ALJ's decision to the District Court for the District of
17  Arizona, and the Court, upon stipulation of the parties, remanded the matter for further
18  proceedings.[1] (AR. 530-31). On remand, two hearings were held and Plaintiff, who was

---

[1]The Court reversed the Commissioner's decision and remanded the matter for further administrative proceedings directing, in pertinent part, that
    upon remand, the administrative judge will:
    • conduct another hearing and issue a de novo decision;
    • reassess Plaintiff's residual functional capacity;
    • reevaluate Plaintiff's credibility;
    • give further consideration to the examining neurologist's opinion;
    • obtain vocational expert testimony to determine what jobs, if any, Plaintiff could perform given his exertional and non-exertional limitations.
    On remand, the Plaintiff may submit additional evidence and arguments to the ALJ. Those aspects of the ALJ's prior decision not specifically addressed here are not specifically affirmed.
(AR. 530-31).

1 represented by counsel, testified at both. (AR. 464-66 (July 6, 2011); 500-18 (May 24, 2011)). Additionally, Vocational Expert ("VE") Kathleen McAlpine also testified at the July 6, 2011 hearing. On August 18, 2011, the ALJ issued his decision denying benefits. (AR. 391-77). On September 10, 2012, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR. 183).

Plaintiff then filed the instant action raising the following grounds: (1) the ALJ improperly evaluated opinions from Dr. Petronella, the examining neurologist; (2) the ALJ improperly evaluated opinions form examining physician Dr. Hassman; (3) the ALJ's hypothetical question was not accurate; (4) the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p; (5) substantial evidence did not support the ALJ's credibility finding; (6) substantial evidence did not support the ALJ's evaluation of Plaintiff's education; and (7) substantial evidence did not support the ALJ's evaluation of vocational evaluator Weaver's report.

**STANDARD**

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can

support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Moreover, the Commissioner, not the court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence and determine the case accordingly. *Matney,* 981 F.2d at 1019. However, the Commissioner's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett,* 180 F.3d at 1098 (*quoting Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998)). Rather, the Court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (*quoting Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

**DISCUSSION**

SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step sequential process. 20 C.F.R. §§404.1520, 416.920. To establish disability, the claimant must show he has not worked since the alleged disability onset date, he has a severe impairment, and his impairment meets or equals a listed impairment or his residual functional capacity ("RFC")[2] precludes him from performing past work. Where the claimant meets his burden, the analysis progresses to step five where the Commissioner must show that the claimant is able to perform other work, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience.

**SUMMARY OF THE ALJ'S PERTINENT FINDINGS**. Except to the extent indicated in the 2011Decision, the ALJ "incorporate[d] by reference the exhibits/testimony in the record as well as the credibility/weight given that evidence as of..." his earlier 2009 Decision. (AR. 389).

---

[2]RFC is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 4 -

In 2011, the ALJ found that Plaintiff "has the following impairments: headache; weakness of the left upper extremity secondary to gunshot wound to the right side of the head; back disorder; affective disorder; and generalized anxiety disorder...." (AR. 391). The ALJ determined that Plaintiff had the RFC to perform the full rage of light work as defined in 20 C.F.R. §§404.1567(a) and 416.967(a) subject to the following:

> He is restricted from handling, fingering and feeling with the left upper extremity, although he testified that he could move the left arm, bend the left arm at the wrist, use the left arm as a guide for the right arm and extend the fingers occasionally. He is right-hand dominant, and has no restrictions with using the right upper extremity. He has no restrictions with sitting, standing or walking. He does not require an assistive device. He has no restrictions with seeing, hearing and speaking. He is restricted from climbing ladder/rope/scaffolds due to left hemi-paresis. He can occasionally climb ramp/stairs, kneel, crouch and crawl, and has no limitations with stooping. He should avoid working at unprotected heights due to left hemi-paresis. Due to his mental impairment, the claimant can perform simple repetitive unskilled work. He can respond appropriately to supervision, coworkers and usual work situations; deal with changes in a routine work setting; and sustain the pace and concentration required in an ordinary work setting on a reasonably sustained basis.

(AR. 393). Relying on the Medical Vocational Guidelines ("Grids") as a "framework" with VE testimony that Plaintiff could work as a janitor/housekeeper, usher/ticket taker, and escort, the ALJ decided that Plaintiff was not disabled from October 24, 2006 though the date of the decision. (AR. 396).

**EXAMINING DR. PETRONELLA**

In contrast to the ALJ's 2011Decision finding that Plaintiff could perform the full range of light work subject to the limitations indicated by the ALJ, the ALJ's 2009 Decision assessed an RFC limiting Plaintiff to the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a). (AR. 13).

In reaching his 2009 Decision, the ALJ gave "significant weight" to the opinions of examining psychiatrist Hunter Yost, M.D., examining specialist in family practice and occupational medicine, Susan Courtney, M.D., and examining neurologist Richard Petronella, M.D. (AR. 14-15). The ALJ found the opinions were "well-supported by the medical evidence...are not inconsistent with other substantial evidence of record....In addition, these physicians are examining sources who are familiar with Social Security Rules

1 and Regulations and legal standards set forth therein and best able to provide a superior
2 analysis of the claimant's impairments and resulting limitations." (AR. 15).

3 Significantly, the ALJ did not discuss Dr. Petronella's opinion in 2011 Decision after
4 remand. Plaintiff takes issue with the fact that although the ALJ accorded significant weight
5 to Dr. Petronella's opinion in the 2009 Decision, the ALJ adopted Dr. Hassman's primarily
6 less restrictive findings in the 2011 Decision without specifically rejecting Dr. Petronella's
7 opinion.

8 Upon examination of Plaintiff in March 2008, Dr. Petronella's impression was left
9 hemiparesis post gunshot wound to the head. (AR. 182). He opined that Plaintiff could:
10 occasionally lift up to 20 pounds; carry up to 20 pounds; sit for 8 hours at one time without
11 interruption; stand for 2 hours at one time without interruption; and walk for 10 minutes at
12 one time without interruption; sit for a total of 8 hours; walk for a total of one hour;[3]
13 frequently use his right hand to reach, including reaching overhead; occasionally use his left
14 hand to reach, including reaching overhead; frequently handle, finger, feel and push/pull with
15 his right hand; occasionally handle, finger, feel and push/pull with his left hand; frequently
16 operate foot controls with his right foot and occasionally with his left foot; never climb
17 ladders or scaffolds, kneel, or crawl; and occasionally climb stairs and ramps, stoop, and
18 crouch; never work around unprotected heights, moving machinery, extreme cold or heat;
19 occasionally operate a motor vehicle; and occasionally work around dust, odors, fumes and
20 pulmonary irritants and vibrations. (AR. 174-79; *see also* AR. 180-182).

21 Upon an August 2010 examination of Plaintiff, Jerri Hassman, M.D., diagnosed:
22 "[s]tatus post gunshot wound to the right side of his head, causing hyperreflexia on the left,
23 minimal motor weakness of the left upper extremity, and very minimal weakness at the left
24 ankle, but profound hemisensory loss on the left side, also decreased coordination of the left
25 upper extremity, especially noted for finger-nose-finger and rapid alternating movements."

26

27 [3]Although the Medical Source Statement of Ability to Do Work-Related Activities
(Physical) form contained a space to indicate the total time Plaintiff could stand in a work
28 day, Dr. Petronella left that portion of the form blank. (AR. 175).

- 6 -

1 (AR. 825). Dr. Hassman opined that Plaintiff: could occasionally lift and carry 20 pounds
2 and frequently carry 10 pounds; had no limitations in walking, standing or sitting; could
3 occasionally climb ramps and stairs, kneel, crouch, crawl, and reach on the left; never climb
4 ladders, ropes or scaffolds, and handle, finger and feel on the left; was not limited in
5 reaching, handling, fingering, or feeling on the right; and could not work around moving
6 machinery, extremes in temperature, dust, fumes, gases, excessive noise, or work with or
7 around chemicals. (AR. 826-829: *see also* AR. 823-25).

8 In his 2011 Decision, the ALJ gave "great weight to..." Dr. Hassman's opinion as that
9 opinion together with the examining psychologist's opinion "support the RFC in this
10 decision." (AR. 395). The ALJ's 2011 Decision did not discuss Dr. Petronella's decision.
11 Instead, the ALJ stated in his 2011 Decision that "except as otherwise provided...[he]
12 incorporates the exhibits/testimony in the record as well the credibility/weight given that
13 evidence as of January 16, 2009." (AR. 389).

14 Plaintiff argues that the ALJ improperly rejected Dr. Petronella's opinion–an opinion
15 to which he had given significant weight in 2009. Additionally, the Court's Order remanding
16 this matter specifically instructed that Dr. Petronella's opinion was to be reevaluated on
17 remand. (*See* AR. 531). Moreover, in vacating the 2009 Decision and remanding the matter
18 to the ALJ for further proceedings pursuant to the Court's remand Order, the Appeals
19 Council stated:

20 The Administrative Law Judge found that the claimant had severe impairments but that he could perform the full range of sedentary work. In so finding, the
21 Administrative Law Judge stated that he accorded great weight to the medical opinions of record, including that of Richard Petronella, M.D. *However, Dr.*
22 *Petronella indicated that the claimant had limitations with regard to his ability to reach, handle, finger, fee1, and push/pull; and that he had limitations with*
23 *regard to exposure to dusts, odors, fumes, and (other) pulmonary irritants, and exposure to loud noise (Exhibit 13F). The Administrative Law Judge did not*
24 *set forth a basis for the apparent rejection of Dr. Petronella's opinions in those regards.* Upon remand the Administrative Law Judge will:
25
26 • Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the
27 assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 96-8p). In so doing, evaluate the examining
28 source opinion pursuant to the provisions of 20 CFR 404.1527

- 7 -

<blockquote>
and 416.927, and Social Security Ruling 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the examining source to provide additional evidence and/or further clarification of the opinion....
</blockquote>

(AR. 534-35) (emphasis added).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" *Ryan v. Commissioner of Social Security,* 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005); *see also Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995)). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Ryan,* 528 F.3d at 1198 (quoting *Bayliss,* 427 F.3d at 1216).

Ignoring this standard, Defendant contends that the ALJ "by stating that he carefully considered the entire record in making his findings ([AR.] 391),...implicitly rejected...[Dr. Petronella's] opinion." (Defendant's Brief, p. 10). Defendant also points out that not all of the ALJ's findings were inconsistent with Dr. Petronella's assessed limitations, and that, in some instances the ALJ's RFC was more restrictive than Dr. Petronella's. (*See id.* at pp. 10-11). Finally, Defendant presents a host of reasons why Dr. Petronella's opinion should be rejected. (*Id.* at pp. 11-13).

It is undisputed that the ALJ's 2011 Decision is silent as to Dr. Petronella's 2008 opinion. Accordingly, to the extent that Defendant posits reasons why the ALJ may have rejected Dr. Petronella's opinion, the Ninth Circuit has been clear that "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Commissioner of Social Security Admin.,* 554 F.3d 1219, 1226–27 (9th Cir.2009) (citations omitted); *see also Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1054 (9th Cir.2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision")

- 8 -

(citations omitted). Further, even though the ALJ may not have rejected *all* of Dr. Petronella's opinion, the ALJ's decision is still devoid of his reasons why he rejected some of Dr. Petronella's limitations, and without such an explanation, the Court is unable to assess whether the ALJ's decision was erroneous. This is especially troublesome given that in remanding the matter, the Appeals Council specifically directed the ALJ to consider Dr. Petronella's assessed limitations. Moreover, as Plaintiff persuasively points out, "[i]f the Commissioner did not believe that Dr. Petronella's opinion warranted reevaluation, the Commissioner should not have stipulated in [Plaintiff's] first civil action to that reevaluation. Having agreed to that reevaluation adopted by the court, the Commissioner cannot properly protest." (Plaintiff's Reply, p. 2).

Indeed, "[a]n administrative agency is bound to follow the instructions of the reviewing court on remand." *Nolte v. Astrue,* 2012 WL 4466558, *2 (D.Ariz. Sept. 27, 2002) (citing *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989), *abrogated on other grounds as discussed in Shalala v. Schafer,* 509 U.S. 292 (1993)). Consequently, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan,* 490 U.S. at 886.

On the instant record, the Court cannot agree with Defendant that any error in rejecting Dr. Petronella's opinion was harmless. First, failure to comply with the remand order can constitute reversible error. *See Sullivan,* 490 U.S. at 886. Further, an ALJ's error may be only deemed harmless "where it is inconsequential to the ultimate nondisability determination." *Molina v Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation marks and citations omitted). Other than giving Dr. Hassman's opinion great weight, the ALJ provided absolutely no reason whatsoever that could be construed in any way to support rejection of Dr. Petronella's opinion. *Cf. Id.* at 1118-1119 (noting that ALJ's properly supported rejection of testimony can render harmless the ALJ's failure to discuss and reject similar testimony from other witnesses). The ALJ's failure to discuss Dr. Petronella's opinion is also troubling because he gave that opinion significant weight in his 2009 Decision, finding it consistent with the substantial evidence of record. (AR. 15). Yet, now

- 9 -

1  Dr. Petronella's opinion precludes the ALJ's 2011 finding that Plaintiff can perform light
2  work. (*See* AR. 880).  Finally, "where the [Commissioner] has failed to advance any
3  legitimate reasons for disregarding the examining physicians' medical findings, reports, and
4  opinion, we hold that substantial evidence does not support the [Commissioner's] decision."
5  *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990).
6  **EXAMINING DR. HASSMAN'S OPINION REGARDING REACHING.** In the 2011 Decision, the
7  ALJ accorded great weight to examining Dr. Hassman's opinion and incorporated the
8  majority of Dr. Hassman's assessed limitations into the RFC. (AR. 395).  However, the ALJ
9  omitted from the RFC assessment, without discussion, Dr. Hassman's opinion that Plaintiff
10 was restricted to occasional left-arm reaching. (AR. 828; *see also* SSR 83-10 (occasionally
11 means up to one-third of the workday)).  While Defendant does not dispute that the ALJ did
12 not include Dr. Hassman's restriction on left-arm reaching, Defendant argues that the ALJ's
13 RFC was more restrictive than Dr. Hassman's assessment "given the ALJ's finding that
14 Plaintiff could use his left arm only as a guide for his right arm...." (Defendant's Brief, p. 13).

15  Because both Drs. Hassman and Petronella opined that Plaintiff was limited to
16 occasional left-arm reaching, (*see* AR.  175, 828), this limitation does not appear to be
17 contradicted.  Yet, the ALJ did not set forth any reason for rejecting it. *See Ryan*, 528 F.3d
18 at 1198 (the ALJ must set forth clear and convincing reasons for rejecting uncontradicted
19 opinion of examining doctor and must set forth specific and legitimate reasons for rejecting
20 contradicted opinion of examining doctor).

21  "Reaching" is defined as "extending the hands and arms in any direction." SSR 85-
22 15. As Plaintiff points out, without inclusion of Dr. Hassman's restriction of occasional left-
23 arm reaching, the ALJ's RFC assessment limiting Plaintiff to using his left arm as a guide
24 in any direction means without any limitation as to how often he could do this.  The ALJ's
25 failure to address Dr. Hassman's reaching limitation also arguably impacted   the VE

- 10 -

testimony given that the ALJ's hypothetical posed to the VE included that Plaintiff "can use his left arm but not his left hand."[4]  (AR. 488).

To rebut the VE's testimony that Plaintiff could work as a janitor/housekeeper, escort, and ticket taker, Plaintiff submitted a statement from vocational consultant Tracy Young, MA, CRC, CLCP, who, upon review of the record, opined that Plaintiff would be unable to perform the jobs considering, *inter alia,* that Plaintiff does not have use of his non-dominant left hand.  (AR. 874-80). Young pointed out that the *Dictionary of Occupational Titles* ("DOT") "did not delineate whether the[] particular demands require on [sic] or both hands...." (AR. 875).  Young opined that the jobs of janitor and ticket taker would require use of both hands.  (AR. 876).  She also stated that the job of escort required frequent reaching and handling and occasional fingering and that the DOT did not delineate between unilateral or bilateral activity. (AR. 877).  According to Young, "the reaching, handling, and fingering requirements [of all three jobs] exceed the physical restrictions outlined by Dr. Hassman.  In addition, the manner in which the [sic] all the jobs are actually performed require bilateral abilities in handling and fingering."  (AR. 878).

Young further stated that the DOT requirements on handling and reaching exceeded the limitations assessed by Dr. Petronella.  (AR. 880).  Moreover, Dr. Petronella indicated that Mr. Dominguez can only walk for 10 minutes at a time with a total of one hour in an 8 hour day; yet, all three jobs are at the light level per the DOT, and as performed, would

---

[4]At one point the ALJ asked Plaintiff: "[S]o you can use that [left] hand as guide for your right, for what you do with your right hand?  Is that right?...If you pick something up that requires two hands might you do that?  You have to use the left hand as a guide?"  (AR. 485) To which Plaintiff responded: "I can use the arm[,] yes."  (*Id.*). The ALJ went on to state to the VE that Plaintiff "can use the left arm but not the left hand."  (AR. 488).  As Defendant points out, the ALJ felt Plaintiff's ability to use his left arm as a guide without limitation was significant enough to include in the RFC assessment. The ALJ relied on the finding that Plaintiff could "use his left upper extremity to guide his right upper extremity for lifting, carrying, *reaching* or other activities (Testimony) which substantiates the claimant's ability to perform the RFC reached in this decision."  (AR. 396 (rejecting the opinion of Plaintiff's vocational expert for this reason)) (emphasis added).

- 11 -

1 | require more than one hour total walking. (*Id.*). Thus, "[i]n individual with the restrictions
2 | outlined by Dr. Petronella would not be able to perform these jobs." (*Id.*).

3 The ALJ rejected Young's opinion because she "failed to consider the claimant's testimony regarding his ability to use his left upper extremity to guide his right upper extremity for lifting, carrying, reaching or other activities...." (AR. 396). Yet, this rejection of Young's testimony is premised on the ALJ's unsupported rejection of Dr. Petronella's opinion as well as Dr. Hassman's opinion regarding left-arm reaching. Moreover, it baffles the Court as to how Plaintiff's ability to use his left arm as a guide would enable him to perform bilateral hand functions, such as folding, making beds, hanging drapes, and rolling carpets as required by the housekeeping/janitor job (*see* AR. 246) or to tear tickets or affix admission bracelets in performing duties as a ticket taker as identified by Young. (*see* AR. 876; *see also* Plaintiff's Brief, p. 14 (citing Young's opinion)). Although the ALJ may reject a lay witness' testimony "upon giving a reason germane to that witness," *Parra,* 481 F.3d at 750, the ALJ's reason for rejecting Young's testimony cannot be deemed to be germane to her opinion on this record given that the ALJ's reasoning has no direct correlation to Young's opinion.

At bottom, the Commissioner bears the burden of showing that Plaintiff can do other work. *See Tackett,* 180 F.3d at 1095. Here, the ALJ relied on an RFC assessment that is not supported by substantial evidence in the record given the ALJ's failure to address Dr. Petronella's opinion and Dr. Hassman's opinion regarding left-arm reaching. *See e.g. Pitzer v. Sullivan,* 908 F.2d at 506 (where the Commissioner has failed to advance any legitimate reasons for disregarding the examining physician's opinion, "we hold that substantial evidence does not support the [Commissioner's] decision."). Because the ALJ's RFC assessment was unsupported by substantial evidence, it follows that his hypothetical

1  questions posed to the VE relying on the RFC assessment is also unsupported by substantial
2  evidence.[5]

**PLAINTIFF'S CREDIBILITY**

Plaintiff challenges the ALJ's finding that Plaintiff's "testimony with regard to the severity and functional consequences of his symptoms is not fully credible...." (AR. 395).

When assessing a claimant's credibility, the "ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007) (internal quotation marks and citation omitted). However, where, as here, the claimant has produced objective medical evidence of an underlying impairment that could reasonably give rise to the symptoms and there is no affirmative finding of malingering, the ALJ's reasons for rejecting the claimant's symptom testimony must be clear and convincing.[6] *Carmickle v. Commissioner, Social Security Admin.,* 533 F.3d 1155, 1160-

---

[5]Because the Court finds that the ALJ's erroneous rejection of Dr. Petronella's opinion, Dr. Hassman's opinion regarding left-arm reaching, invalidated the ALJ's RFC assessment and subsequent VE testimony, the Court does not address Plaintiff's further objections to the VE testimony and resulting ALJ findings based on VE testimony as such objections are moot.

[6]Defendant argues that the "clear and convincing reasons" standard for discounting credibility is inconsistent with the standard articulated in *Bunnell v. Sullivan,* 947 F.2d 341, 345-346 (9th Cir. 1991) (*en banc*), that an ALJ's credibility findings must be supported by the record and "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds...' and did not arbitrarily discredit a claimant's testimony regarding pain. (Defendant's Brief, pp.19-20 (quoting *Bunnell,* 947 F.2d at 345-346 (internal quotation marks and citations omitted)). Defendant's position is unavailing. First, "a requirement of 'clear and convincing reasons' is distinct from a clear [and] convincing evidentiary standard. *Cf. Bayliss v. Barnhart*, 427 F.3d 1211, 1216) (9th Cir.2005) ('To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.' ...)." *Provencio v. Astrue,* 2012 WL 2344072, *11 n. 5 (D.Ariz. June 20, 2012). Second, as Defendant points out, *Bunnell* itself requires that the ALJ "specifically make findings..." that are supported by the record, to support the conclusion that the claimant's allegations of severity are not credible. *Bunnell*, 947 F.2d at 345. Further, these findings must be "sufficiently specific to allow a reviewing court to conclude the..." ALJ rejected the testimony on permissible grounds. *Id.* at 345-346. The District Court for the

- 13 -

1  61 (9th Cir. 2008). "The ALJ must state specifically which symptom testimony is not credible
2  and what facts in the record lead to that conclusion." *Smolen v Chater,* 80 F.3d 1273, 1284
3  (1996); *see also Orn,* 495 F.3d at 635 (the ALJ must provide cogent reasons for the disbelief
4  and cite the reasons why the testimony is unpersuasive). The ALJ may consider ordinary
5  techniques of credibility evaluation, such as the claimant's reputation for lying, prior
6  inconsistent statements about the symptoms, and other testimony from the claimant that
7  appears less than candid; unexplained or inadequately explained failure to seek or follow a
8  prescribed course of treatment; the claimant's daily activities; the claimant's work record;
9  observations of treating and examining physicians and other third parties; precipitating and
10 aggravating factors; and  functional restrictions caused by the symptoms. *Lingenfelter v.*
11 *Astrue ,* 504 F.3d 1028, 1040 (9th Cir. 2007);  *Robbins v. Social Sec. Admin.,* 466 F.3d 880,
12 884 (9th Cir. 2006); *Smolen,* 80 F.3d at 1284.

13       The ALJ discounted Plaintiff's credibility by finding Plaintiff was not motivated to
14 work,  he improved with treatment and no longer takes medication for headaches; "he uses
15 his left upper extremity to guide his right upper extremity..."  (AR. 394); he "can watch
16 television, grocery shop, vacuum, and help with the dishes[]"; he had very little medical

---

District of Arizona has noted that "[subsequent cases have explained that 'unless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.' *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir.2006) (emphasis added); *see also Lingenfelter v. Astrue*, 504 F.3d 102[8], 1036 (9th Cir.2007). Thus, the cases applying the 'clear and convincing' standard in no way overturn *Bunnell*. Numerous cases have applied the 'clear and convincing' standard, and this Court is in no position to overrule them. *See, e.g., Taylor v. Camber of Soc. Sec. Admin*., [659 F.3d] 1228, 1234 (9th Cir.2011); *Vasquez v. Astrue*, 572 F.3d...[586, 591 (9th Cir. 2009)]; *Lingenfelter*, 504 F.3d at 1036; *Orn*, 495 F.3d at 635; *Robbins*, 466 F.3d at 883; *Smolen* [*v. Chater*]*,* 80 F.3d [1273,]...1281 [(9th Cir. 1996)]; *Dodrill* [*v. Shalala*], 12 F.3d [915,]... 918 [(9th Cir. 1993)]." *Provencio,* 2012 WL 2344072 at *11 n.5. Moreover, as discussed below, although the ALJ set forth specific  reasons for rejecting Plaintiff's credibility, those reasons are not permissible and/or supported by the record.  Thus, the ALJ's credibility finding fails under Defendant's proposed standard as well as the "clear and convincing reasons" standard.

1 treatment; he did not lose his job because he could not work, but because he was fired for
2 misconduct; and he "believed there were jobs, other than his past relevant work, that he could
3 do." (AR. 13-14).

4       The credibility assessment is not supported by clear and convincing evidence. For
5 example, the ALJ accorded "great weight" to the opinion of examining psychologist Noelle
6 Rohen who diagnosed: Major Depressive Disorder, Single Episode, Chronic, Moderate to
7 Severe; Generalized Anxiety Disorder; Rule out Mild Cognitive Disorder Secondary to
8 Traumatic Brain Injury; Pain Disorder Associated with Both Psychological Factors and a
9 General Medical Condition. (AR. 395, 819). Dr. Rohen also found that Plaintiff presented
10 "as quite depressed, and complain[ing] of anxiety as well." (AR. 820). She opined that
11 Plaintiff's "depression is expected to impact his ability to work, to the extent that it dampens
12 his motivation and impairs his ability to present himself as somebody who can motivate and
13 get the job done." (AR. 820).

14       Defendant defends the ALJ's finding that Plaintiff was not motivated to work, arguing
15 that all of Plaintiff's bills were paid by his girlfriend. (Defendant's Brief, p. 21). Yet,
16 Defendant omits any discussion of Dr. Rohen's opinion, which was afforded great weight
17 by the ALJ. Moreover, Defendant also states, when supporting the ALJ's finding that
18 Plaintiff did not quit work because of disability, that "Plaintiff had looked for other work."
19 (*Id.* at p. 21). Defendant cannot have it both ways. Regardless, in light of Dr. Rohen's
20 opinion that lack of motivation correlated directly to Plaintiff's depression, the Court finds
21 it was improper for the ALJ to use a symptom of Plaintiff's depression, verified by a
22 psychologist whose opinion the ALJ has accorded great weight, to discount Plaintiff's
23 credibility. This same conclusion also undermines the ALJ's rejection of Plaintiff's
24 credibility based on the fact that Plaintiff relied on others for support.

25       There is no dispute that Plaintiff experienced improvement with headaches using
26 medication. (*See e.g.* AR. 830 (Plaintiff's headaches improved with Elavil, Fiorinal, and
27 Amitriptyline)). The ALJ discounted Plaintiff's testimony because Plaintiff was no longer
28 taking the medication. Generally, a plaintiff's failure to "seek treatment or to follow a

1 prescribed course of treatment" is a relevant factor in assessing credibility. *See Smolen,* 80
2 F.3d at 1284. However, the ALJ "'must not draw any inferences about an individual's
3 symptoms and their functional effects from a failure to seek or pursue regular medical
4 treatment without first considering any explanations that the individual may provide, or other
5 information in the case record, that my explain infrequent or irregular medical visits or
6 failure to seek medical treatment' including inability to pay...." *Orn,* 495 F.3d at 638
7 (quoting SSR 96-7p). Here, Plaintiff testified that he stopped taking headache medication
8 because "my doctor said I am having kidney and liver issues. And I have to cut down."
9 (AR. 512). Further, although the record supports the conclusion that Plaintiff has not had
10 consistent treatment for depression, Dr. Rohen emphasized that Plaintiff was "in true need
11 of treatment." (AR. 820). Yet, despite the provisions of SSR 96-7p, no attempt was made
12 to develop the record as to why Plaintiff had not sought such treatment. That a person with
13 moderate to severe chronic depression (*see* AR. 819), who has previously attempted suicide
14 by shooting himself in the head, and whose depression results in lack of motivation (AR.
15 820) may not be motivated to seek mental health treatment can be viewed as entirely
16 consistent with Plaintiff's allegations of depression and Dr. Rohen's assessment of same.
17 *Cf. Burch v. Burkhart,* 400 F.3d 676, (9th Cir. 2005) (ALJ properly considered lack of
18 treatment where plaintiff had not been diagnosed with depression and there were no
19 documented episodes of decompensation). Finally, as Plaintiff points out, there is no
20 showing on the instant record that there was any type of treatment that Plaintiff should have
21 sought for hemiparesis due to status post gunshot wound to the head.

22 The record supports the conclusion that Plaintiff was terminated from his last job after
23 an incident at work involving a gun. Regardless, "the fact that a person holds down a job
24 doesn't prove that he isn't disabled, because he may have a careless or indulgent employer
25 or be working beyond his capacity out of desperation." *Henderson v. Barnhart,* 349 F.3d
26 434, 435 (7th Cir.2003). Although Plaintiff testified that he thought there should be work he
27 could do, he was clear that he could not perform his past work; and, the ALJ, in essence,
28

1 agreed with this assessment given the ALJ's finding that Plaintiff could not return to his past
2 work.

3 Defendant does not challenge Plaintiff's assertion that the ALJ's rejection of
4 Plaintiff's credibility based on his activities was improper on this record. *See e.g. Vertigan*
5 *v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) ("the mere fact that a plaintiff has carried on
6 certain daily activities such as grocery shopping, driving a car, or limited walking for
7 exercise, does not in any way detract from [his or] her credibility as to [his or] her overall
8 disability. One does not need to be []utterly incapacitated[] in order to be disabled.")
9 (internal quotation marks and citation omitted). Finally, the ALJ's conclusion that Plaintiff
10 "uses his left upper extremity to guide his right upper extremity (right hand dominant)" in
11 no way detracts from Plaintiff's credibility and Defendant has not argued otherwise.
12 Consequently, on the instant record, the ALJ has failed to set forth clear and convincing
13 reasons to discount Plaintiff's credibility.

14 **CONCLUSION**

15 For the foregoing reasons, Plaintiff has established that the ALJ's Decision cannot
16 stand. Plaintiff requests remand for an immediate award of benefits or, alternatively remand
17 for further proceedings.

18 Plaintiff filed his application for benefits in October 2006–almost eight years ago.
19 The Commissioner received two opportunities– once in 2009 and, again, on remand in 2011–
20 to satisfy her step-five burden of establishing that Plaintiff could perform other work, and
21 has twice failed to do so. Not only did the ALJ's 2011 Decision fail to comply with the
22 remand order from the Court and the directions from the Appeals Council, but the ALJ relied
23 on an RFC assessment that is not supported by substantial evidence in the record given the
24 ALJ's failure to address Dr. Petronella's opinion and Dr. Hassman's opinion regarding left-
25 arm reaching. The ALJ also erroneously rejected Young's testimony. The ALJ erroneously
26 discounted Plaintiff's credibility, and a good portion of the ALJ's credibility finding ignored
27 the reality of Plaintiff's life-long, profound depression.

28

The Ninth Circuit has recognized that "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) (quoting *Varney v. Secretary of Health and Human Services,* 859 F.2d 1396, 1398 (9th Cir. 1988)); *see also Terry v. Sullivan,* 903 F.2d 1273 (9th Cir. 1990) (remanding for an award of benefits where the plaintiff applied almost four years prior); *Erickson v. Shalala,* 9 F.3d 813 (9th Cir. 1993) (remanding for an award of benefits where plaintiff, who was disabled under the Act, "ha[d] been waiting for well over four years for his disability benefits"). Acknowledging that the decision whether to remand for further proceedings or an award of benefits is within the court's discretion, the Ninth Circuit has remanded for payment of benefits where the ALJ's decision was unsupported by substantial evidence. *See Pitzer,* 908 F.2d at 506 (remanding for payment of benefits where the ALJ did not provide adequate reasons for disregarding examining physician's opinion); *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987) (remanding for award of benefits where the court was "convinced that substantial evidence does not support the [Commissioner's] decision."). On the instant record, remand for an award of benefits is appropriate.

Accordingly,

IT IS ORDERED that this matter is REMANDED to the Commissioner for immediate calculation and award of benefits.

The Clerk of Court is DIRECTED to enter judgment accordingly and to close its file in this matter.

DATED this 30th day of September, 2014.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE